**IT IS ORDERED as set forth below:**



**Date: March 30, 2020**

_____
**Wendy L. Hagenau
U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 15-64266-WLH |
| CLAYTON GENERAL, INC., f/k/a SOUTHERN REGIONAL HEALTH SYSTEM, INC., d/b/a SOUTHERN REGIONAL MEDICAL CENTER, ET. AL., | CHAPTER 11 |
| Debtors, | |

## ORDER DETERMINING FEES PAYABLE TO THE UNITED STATES TRUSTEE

**THIS MATTER** is before the Court on the Request for Final Decree and Motion to Determine Fees Payable to the United States Trustee ("U.S. Trustee") Program (Doc. No. 1360) (the "Motion"). The Court held a hearing on the Motion on March 13, 2020, at which the Liquidating Trustee and his counsel, Matthew Levin, and counsel for the U.S. Trustee, Thomas Dworschak, Jeneane Treace, and Beth Levene, appeared telephonically and presented argument.

1

At issue is the amount of fees due to the U.S. Trustee through the end of 2019. The resolution of the question depends on whether 28 U.S.C. § 1930(a)(6)(b), as amended in 2017, applies to disbursements made in this case, which was filed in 2015. The Court finds the statute applies and, accordingly, the Liquidating Trustee owes $37,081 to the U.S. Trustee.

### A. Background

The U.S. Trustee program was established as a division within the Department of Justice (which is part of the Executive Branch) in 1978 in select districts. See U.S. Government Accounting Office, Report to the Chairman, Permanent Subcommittee on Investigations, Committee on Governmental Affairs, U.S. Senate, GAO-92-133, at 3-5 (Sept. 1992) (the "GAO Report"). In 1986, Congress passed legislation to implement the U.S. Trustee program nationwide. The Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub. L. No. 99-554, §§ 111, 301-311, 100 Stat. 3088, 3090, 3118 (1986). While Alabama and North Carolina were expected to join the U.S. Trustee program eventually, the 1986 statute authorized the Judicial Conference of the United States to establish the Bankruptcy Administrator ("BA") program, which was intended to perform administrative duties similar to those of the U.S. Trustees. Pub. L. No. 99-554, § 302(d)(3)(I) 100 Stat. at 3123. The Judicial Conference created the BA program in Alabama and North Carolina in 1987. See 1987 Report of the Proceedings of the Judicial Conference of the United States 53-54, 81-82; GAO Report at 4. When implementing the U.S. Trustee program, Congress also adopted a fee schedule to ensure the U.S. Trustee program was self-funded "by the users of the bankruptcy system – at no cost to the taxpayer." H.R. Rep. No. 764, 99th Cong. 2d Sess. 26 (1986). The fee schedule is codified in 28 U.S.C. § 1930(a)(6) and has since been amended several times.

On October 26, 2017, Congress passed the Bankruptcy Judgeship Act of 2017 (the "Act"). The Act extended several temporary bankruptcy judge positions and created other judgeships.

Section 1004 of the Act, entitled Bankruptcy Fees, also amended the U.S. Trustee fee schedule set forth in Section 28 U.S.C. § 1930(a)(6). The amendment provided that "during each of fiscal years 2018-2022, if the balance in the United States Trustee System Fund as of September 30 of the most recent full fiscal year is less than $200,000,000, the quarterly fee payable for a quarter in which disbursements equal or exceed $1,000,000 shall be the lesser of one percent (1%) of such disbursement or $250,000." The Act went on to provide that for the same fiscal years (2018-2022), 98% of the fees collected under Section 1930(a)(6) will be deposited in the U.S. Trustee's System Fund while the remaining 2% will be deposited in the General Fund of the Treasury.[1] Legislative history suggests this 2% was to help offset the cost of the judgeships. The amendment to U.S. Trustee fees in 28 U.S.C. § 1930 is significant for larger cases because, prior to the amendment, the fee for a quarterly disbursement between $1,000,000 and $2,000,000 was $6,500, and the maximum quarterly fee that could be charged under Section 1930 was $30,000.

Paragraph (c) of Section 1004 of the Act provides, "The amendments made by this section shall apply to quarterly fees payable under section 1930(a)(6) of title 28, United States Code, as amended by this section, for disbursements made in any calendar quarter that begins on or after the date of enactment of this Act." This effective date is January 1, 2018. The Judicial Conference imposed the amended fees in BA districts, but only to cases filed on or after October 1, 2018. The Act also made changes to Bankruptcy Chapter 12. Pursuant to Section 1005(c), the substantive changes to Chapter 12 applied only to bankruptcy cases pending on the date of the enactment, and in which a plan has not been confirmed and a discharge has not been entered; the Chapter 12 amendments also apply to any bankruptcy case commenced after the date of enactment.

The question is whether Section 1930(a)(6), as amended, applies to disbursements made in

---

[1] This provision is notwithstanding 28 U.S.C. § 589a(b)(5), which requires 100% of the fees collected under Section 1930(a)(6) to be deposited in the U.S. Trustee System Fund.

3

this case. If it does, the Debtors owe additional U.S. Trustee fees.

### B. Facts

Clayton General, Inc. and affiliated entities ("Debtors") filed their Chapter 11 petitions on July 30, 2015. The Debtors sold substantially all their assets pursuant to the Court's order dated October 27, 2015 (Doc. No. 373). On June 7, 2018, the Debtors and Committee filed a plan of liquidation (Doc. No. 934). The plan was confirmed on July 26, 2018 (Doc. No. 974) and became effective on September 1, 2018. The plan appointed GGG Partners, LLC as the Liquidating Trustee. The Liquidating Trustee has now filed the Motion, which includes a final report and request for final decree and motion to determine fees payable to the U.S. Trustee program. The Motion includes the following chart showing the amount that would have been owed under the old system of U.S. Trustee Fees and the amount owed under the new system:

| Quarter | Disbursements | Calculation Under Old Schedule | Calculation under New Schedule | Amount Paid |
|---|---|---|---|---|
| Q1 2018 | $ 389,103.49 | $ 4,875.00 | $ 4,875.00 | $ 4,875.00 |
| Q2 2018 | $ 107,599.39 | $ 975.00 | $ 975.00 | $ 975.00 |
| Q3 2018 | $1,351,046.28 | $ 6,500.00 | $13,510.00 | $13,532.23 |
| Q4 2018 | $ 691,961.66 | $ 4,875.00 | $ 4,875.00 | $ 4,875.00 |
| Q1 2019 | $ 187,341.71 | $ 1,625.00 | $ 1,625.00 | $ 1,625.00 |
| Q2 2019 | $ 103,170.00 | $ 975.00 | $ 975.00 | $ 975.00 |
| Q3 2019 | $ 72,702.73 | $ 650.00 | $ 650.00 | $ 0.00 |
| Q4 2019 | $4,047,128.40 | $10,400.00 | $40,471.00 | $ 4,040.00 |
|  | **Totals** | **$30,875.00** | **$67,956.00** | **$30,897.23** |

The disbursements exceed $1,000,000 in only two quarters: Quarter 3/2018 and Quarter 4/2019.

4

If the new fee schedule applies to disbursements made in these two quarters, Debtors owe $37,081 more to the U.S. Trustee in fees.

The Debtors argue the fee schedule as amended in 2017 does not apply "retroactively" to pending cases and the fee schedule is a nonuniform bankruptcy law. The U.S. Trustee contends the amended statute applies and is constitutional. The parties have raised the following questions, which the Court will consider in turn:

1. Does the statute apply to pending cases and, if so, is that application constitutional?

2. Does the amendment to Section 1930(a)(6) violate the bankruptcy clause as a non-uniform law on bankruptcy because of the different fee guidelines in the U.S. Trustee districts and BA districts?

3. Does the amendment to Section 1930(a)(6) violate the uniformity clause of the Constitution which requires that any taxes and fees be applied uniformly across the country?

**C. Analysis**

    **a. Application of Statute to Pending Cases**

First, the Court must determine whether the increased fees apply to pending cases. Debtors argue they do not because the statute is silent and there is a presumption against retroactivity. The U.S. Trustee argues the amended statute applies to all cases and the statute does not exempt cases that were filed before fiscal year 2018. The Court agrees with the U.S. Trustee that the fees owed under the amended statute are determined by disbursement date, not the date a case was filed.

Five courts have issued orders on this issue: In re Buffets, LLC, 597 B.R. 588 (Bankr. W.D. Tex. 2019), appeal pending sub nom. Hobbs v. Buffets, LLC, No. 19-50765 (5th Cir.); In re Circuit City Stores, Inc., 606 B.R. 260 (E.D. Va. 2019), appeal pending sub nom. Fitzgerald v. Siegel, No. 19-2240 (4th Cir.); Clinton Nurseries, Inc. v. Harrington (In re Clinton Nurseries, Inc.), 608 B.R. 96 (Bankr. D. Conn. 2019), appeal pending, Nos. 19-1428 & 19-1433 (D. Conn.); In re Life Partners Holdings, Inc., 606 B.R. 277 (Bankr. N.D. Tex. 2019), appeal pending sub nom. Neary

5

v. Quilling (In re Life Partners Holdings, Inc.), No. 19-90041 (5th Cir.); In re Exide Techs., 611 B.R. 21 (Bankr. D. Del. 2020), appeal pending, No. 20-76 (D. Del.). Three of them agree that the statute was intended to apply to pending cases while two have ruled to the contrary.

The leading case on retroactivity is Landgraf v. USI Film Products, 511 U.S. 244 (1994), where the Supreme Court considered whether amended provisions of title 7 of the Civil Rights Act of 1964, as implemented by the Civil Rights Act of 1991 applied to claims based on conduct occurring prior to the enactment of the amendments. The Supreme Court first looked to the statute, which only stated that the 1991 Act would take effect upon enactment. The Court found this was insufficient to suggest whether it would apply to conduct that occurred at an earlier date. With no clear expression from Congress, two potentially conflicting statutory canons were analyzed to determine if the amendment applied retroactively. First, a court is to apply the law in effect at the time it renders its decision. Id. at 264. Second, retroactivity is not favored in the law, and Congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result. Id. The Court noted a statute is not retroactive merely because it applies in a case arising from conduct that happened before a statute was enacted or upsets expectations. Id. at 269. The presumption against retroactivity is based on a consideration of fairness that individuals should have an opportunity to know what the law is and to conform their conduct accordingly and a consideration of whether settled expectations should be disrupted. Id. at 265. The concern about retroactivity is particularly important where the new statute impairs contractual or property rights. Id at 271. The Court, however, identified numerous cases where a statute or amendment was applied to pre-existing conduct or to existing cases, including granting or removing jurisdiction, providing a right to jury trial or a right to attorney's fees or making procedural changes. Id. at 275-79.

Looking at Section 1930(a)(6), courts have come to different conclusions as to whether

6

Congress' intent is clear as to its applicability to pending cases. In Exide, 611 B.R. 21, Judge Walrath decided that Section 1930(a)(6) applies to all pending cases. She pointed out that the statute is based on the time of disbursements, and not on the time cases are filed. She concluded the statute is forward looking because it only requires the new fees to apply to disbursements in future calendar quarters. The courts in Clinton Nurseries, Inc., 608 B.R. 96, and Circuit City, 606 B.R. 260, ruled consistent with that position.

However, the courts in Buffets, 597 B.R. 588, and Life Partners, 606 B.R. at 287-88, disagreed. Those courts viewed the statute as applying retroactively if it applied to pending cases, even for future quarters. The Buffets and Life Partners courts examined the language of the statute to see if Congress made its intention express. These two courts concluded that Section 1004(c) of the Act, which states that it would apply to disbursements in future quarters, was silent as to whether it applied to future quarters in pending cases. They relied heavily on the case filing date, whereas the Exide, and Circuit City courts relied heavily on the reference to disbursements and disbursement dates. Exide, 611 B.R. at 26; Circuit City, 606 B.R. at 268. Buffets and Life Partners concluded that since the Congressional intent for application was not clear, the presumption against retroactivity meant the Court would not read the statute as applying to existing cases. Buffets, 597 B.R. at 596; Life Partners, 606 B.R. at 283.

The Life Partners Court noted Congress should be clear when it wants a statute to apply to all pending cases and Congress was not clear when it amended Section 1930(a)(6). The Court pointed out the difference in the effective date language between Section 1004 of the Act and Section 1005. Section 1004 states that the U.S. Trustee fee guideline will apply to disbursements occurring in the first quarter after the effective date of the Act, while Section 1005 was clear the Chapter 12 changes did not apply to cases that had already been confirmed. Life Partners, 606 B.R. at 285. The Court said it was not willing to fill in the gap and apply the new fee schedule to

7

all cases, particularly given the large increase in fees.  Id.

The Exide Court used the same Chapter 12 effective date provision to come to the opposite conclusion.  611 B.R. at 27.  The Exide Court concluded that since Congress felt it needed to expressly state the Chapter 12 amendments did not apply to confirmed cases, this suggested that in all other circumstances, the Act did apply to confirmed cases.  Id.  In other words, Congress provided an exception (for Chapter 12 cases) to the general rule that an amendment applies to all pending cases.

This Court agrees with the Exide decision and also notes Congress made other amendments to Section 1930(a)(6), in 2007 and in 1991, that changed the amounts of the U.S. Trustee fees. These changes were relatively minor, but it appears no one argued the changes did not apply to pending cases.  The Court concludes the statute by its terms applies to all cases, including this one, in which disbursements were made beginning January 1, 2018.

Having determined the statute applies to pending cases, the next question is whether that application violates the due process clause of the Constitution.  The Debtors argue applying the 2017 Amendment to pending cases violates due process because the U.S. Trustee has not provided a sufficient justification to require the Debtors to pay the increased fees.  The U.S. Trustee argues that applying the new fee schedule here does not violate due process because the Act had a legitimate legislative purpose – ensuring continued funding for the U.S. Trustee program – and used a rational means to achieve the goal.

The Exide Court held that application of the Act to pending cases did not violate due process because the statute was completely forward looking based on future quarters and future disbursements. 611 B.R. at 30.  The Court did not find protected property rights in the amount of U.S. Trustee fees to be paid.  The Circuit City case also found that due process was not violated – the Court noted courts had not found similar fee changes to be problematic in the past.  For

8

example, Section 1930(a)(6) was amended in 1996 to require payment of U.S. Trustee fees post-confirmation.  At that time, a number of courts addressed whether that amendment was effective as to plans that were already confirmed, and many decided the change was not an impermissible retroactive application of the law.  Circuit City, 606 B.R. at 268 (citing In re AH. Robins Co., 219 B.R. 145 (Bankr. E.D. Va. 1998).  For example, in In re Munford, Inc., 216 B.R. 913 (Bankr. N.D. Ga. 1997), Judge Cotton decided the 1996 amendments did apply to pending confirmed cases and the application of the amendment to confirmed cases did not violate due process.

On the other hand, the Buffets and Life Partners Courts both found that applying the new U.S. Trustee fees retroactively (i.e. to pending cases) would violate due process.  Buffets, 597 B.R. at 596-97; Life Partners, 606 B.R. at 288.  In both cases (and, in fact, in every one of the reported decisions), a plan was confirmed, sometimes many years, before Section 1930(a)(6) was amended.  The Buffets Court found no notice was provided to creditors about the substantial increase in the cost of administering the plan.  597 B.R. at 597.  The Buffets Court relied on 11 U.S.C. § 1141, which describes the effect of confirmation and vests rights in the parties as of the date of confirmation.  Id.  The fact that the plan was confirmed well before the statute changed was an important part of the Buffets analysis.  In the Life Partners case, the actual increase in fees for the debtor would amount to an 833% increase and would take effect after several key events occurred including plan negotiation, confirmation, and distributions by several different successor entities.  606 B.R. at 288.  The Court found this increase in fees to be so egregious that it violated due process.  Both Courts pointed out that the significant changes in the fees impacted the viability of the confirmed plan because the fees were significantly more than what was anticipated.

Here the facts are different, and the concerns voiced by the Buffets and Life Partners Courts do not exist.  While this case was filed before the statute was amended in 2017, the plan was filed after the 2017 amendments, and the plan was confirmed after the amended U.S. Trustee fees took

9

effect. In actuality, the parties had the option to make other decisions. They debated whether to convert the case, dismiss the case, or propose a liquidating plan. They chose to file a liquidation plan knowing the cost of remaining in Chapter 11. The facts here simply are not the same as those in Life Partners or Buffets, and it is not a violation of due process on these facts for the increased U.S. Trustee fees to apply to a case where the plan was filed and confirmed after the statute was amended.

This Court's decision is not only consistent with Exide, Clinton Nurseries, and Circuit City, but also with recent decisions regarding the applicability of two amendments to the Bankruptcy Code, the Small Business Reorganization Act ("SBRA") and the HAVEN Act. Judge Kahn considered whether the new SBRA provisions apply to pending cases in In re Moore Properties of Person County, LLC, No. 20-80081, 2020 WL 995544 (Bankr. M.D.N.C. Feb. 28, 2020). Judge Kahn reviewed Landgraf, 511 U.S. 244, discussed above, and U.S. v. Sec. Indus. Bank, 459 U.S. 70 (1982), in which the Supreme Court considered whether to apply the new Bankruptcy Code provisions to avoid a lien in a case filed under the prior law. In U.S. v. Sec. Indus. Bank, the Supreme Court distinguished between the permissibility of applying new bankruptcy provisions to modify existing contractual rights and the impermissibility of applying that power to defeat vested traditional property interests. Id. at 73. The Supreme Court noted that the contractual right of a secured creditor to obtain repayment is different in legal contemplation from the property right that the creditor may have in the collateral, and the Bankruptcy Code already makes provision for altering certain contractual rights. The Supreme Court concluded that allowing the debtor to avoid the lien would completely destroy the property rights of the secured party and therefore amounted to an impermissible taking violating the due process clause.

In considering the SBRA, Judge Kahn concluded that its application to existing cases did not create any of the concerns expressed about retroactivity because the SBRA did not alter the

10

fundamental contractual rights of creditors, much less any vested property rights. Moore Props., 2020 WL 995544, at *4. Judge Kahn concluded that he was not applying a new law retroactively in violation of the Supreme Court decisions and therefore followed the canon of statutory construction that the court is to apply the law in effect at the time the decision is rendered. Id. at *5.

Similarly, in In re Gresham, 18-56289, 2020 WL 1170712 (E.D. Mich. March 10, 2020), Judge Shefferly considered whether the HAVEN Act applied "retroactively" to a bankruptcy case that was filed before the HAVEN Act became law. The debtor had argued the HAVEN Act applied to her case, which was filed and confirmed before the HAVEN Act became law. She argued her VA disability benefits could now be excluded from her "current monthly income" calculation, were not part of her "projected disposable income" for purposes of Section 1325(b) of the Bankruptcy Code and did not need to be contributed to the chapter 13 debtor's plan. The chapter 13 trustee argued the HAVEN Act only applied to cases filed after it was enacted.

The HAVEN Act does not state whether it applies to all cases or just to new cases, i.e. cases filed after August 23, 2019. The Court cited Supreme Court authority for the proposition that a court applies the law in effect at the time of rendering a decision unless "doing so would result in manifest injustice." Id. at *2 (citing Bradley v. School Board of Richmond, 416 U.S. 696, 711 (1974)). Judge Shefferly found no manifest injustice in applying the law to pending cases, and nothing in the legislation and its related history to suggest it should apply only to cases filed after its enactment. Accordingly, he held the HAVEN Act applies – as the law in effect at the time– to all current monthly income decisions made after August 23, 2019, regardless of the date the case was filed. Id. at *3.

The analyses in Moore Props. and Gresham support the conclusion that applying the amendment to the U.S. Trustee fees to this case is not an impermissible retroactive application.

11

The amendment does not change any of the rights the parties have under the plan – all those remain the same. The increase in U.S. Trustee fees does not change any property rights that any creditor may have in any particular item of collateral. It also does not directly alter any contractual rights. The Court concludes the application of the U.S. Trustee fee amendments to this existing case is not impermissibly retroactive.

      **b. <u>Bankruptcy Clause</u>**

The Court finds the amendment to Section 1930(a)(6) also does not violate the bankruptcy clause as a non-uniform law on bankruptcy. The Debtors argue the 2017 Amendment was enacted pursuant to the bankruptcy clause of the U.S. Constitution and the amendment to Section 1930(a)(6) is a non-uniform law, or has been applied in a non-uniform way, because it does not apply to all districts in the country. This is based on the fact there are two states that do not participate in the U.S. Trustee program – Alabama and North Carolina – and instead have the BA system. The U.S. Trustee contends the 2017 Amendment was not enacted pursuant to the bankruptcy clause and, even if it was, the fees imposed are uniform and, if not uniform, the increased fees were designed to address a "geographically isolated" problem.

The Court agrees with every court that has considered the issue thus far that the amendment to Section 1930(a)(6) is a law on the subject of bankruptcies. Article I of the Constitution defines the legislative powers of Congress. Section 8 of Article I states Congress shall have the power to "establish . . . uniform laws on the subject of bankruptcies throughout the United States." The U.S. Trustee argues that only substantive laws dealing with rights between debtors and creditors should be considered covered by the Constitution. All of the courts that have considered this argument have rejected it. <u>See</u> <u>Exide</u>, 611 B.R. at 35; <u>Clinton</u>, 608 B.R. at 113; and <u>Life Partners</u>, 606 B.R. at 288. All of them point out that the fees only apply in bankruptcy cases, and the amendment's only subject is bankruptcy, and the fees go to pay for the U.S. Trustee, whose only

12

job is to be involved in bankruptcy cases. The Courts cite numerous other decisions that explain the bankruptcy clause is broad and conclude that the fee schedule amendment is a law on the subject of bankruptcy. This Court agrees that Section 1930 is a bankruptcy law subject to Article I of the Constitution.

The next question is whether Congress enacted a nonuniform law. The Debtors argue that since the U.S. Trustee districts and BA districts imposed increased fees starting on different dates, and on different Chapter 11 cases (pending vs. new), the amendment is not a uniform law. It is important to understand that the U.S. Trustee system was enacted by Congress and is therefore under the legislative branch. Conversely, the BA system was created by the judicial branch and is monitored by the Judicial Conference and the Administrative Office of the Courts. In 1994, the Ninth Circuit found that Congress violated the uniformity requirement of the bankruptcy clause when it exempted Alabama and North Carolina from the U.S. Trustee program. St. Angelo v. Victoria Farms, Inc., 38 F. 3d 1525, 1531-32 (9th Cir. 1994). In response, the Judicial Conference requested that Congress amend Section 1930 to give the Judicial Conference authority to implement quarterly fees in BA districts. In 2000, Congress authorized the Judicial Conference to impose quarterly fees equal to those imposed in U.S. Trustee districts. 28 U.S.C. § 1930(a)(7). Shortly thereafter, the Judicial Conference adopted a Bankruptcy Committee recommendation that quarterly fees be imposed in BA Districts "in the amounts specified in 28 U.S.C. § 1930, as those amounts may be amended from time to time." 2001 Judicial Conference Report at 45-46.

When Congress amended the U.S. Trustee fee schedule in 2017, the amended fees applied to all cases in U.S. Trustee districts pending as of January 1, 2018. However, the fees did not go into effect in the BA districts and the Judicial Conference ultimately imposed the fees only to cases filed on or after October 1, 2018. Therefore, there are two inconsistencies in the way fees are paid in U.S. Trustee districts and in BA districts. First, the fees in U.S. Trustee districts began with the

13

first quarter of 2018 whereas the fees in BA districts began with the fourth quarter of 2018. Second, and perhaps more importantly, the Judicial Conference only required the new fees to be paid in cases filed after October 1, 2018, whereas the U.S. Trustee argues the increased fees apply in U.S. Trustee districts to all pending cases as long as the disbursements were made after January 1, 2018.

In the Exide case, the Court held the law was uniform because it applied to all Chapter 11 debtors in U.S. Trustee districts who made disbursements from 2018 – 2022. The Court noted the uniformity requirement does not require debtors to receive identical treatment as those in other states. 611 B.R. at 36. The Exide Court noted exemptions as an example. Id. The Court concluded the amendment was uniform because it applied in every place where the subject of the statute (the U.S. Trustee) was found and it addressed a problem with the U.S. Trustee system – i.e. a shortfall in the fund. Id. at 37. The Court said the fees charged in the BA system are not relevant to solving the shortfall issue. Id. at 37-38. That is because the BA is funded by the judiciary budget; unlike the U.S. Trustee program, the BA program is not self-funded by fees.

The Exide Court also relied heavily on the prior Judicial Conference statement in 2001 that the same fees would be imposed in BA districts "as those amounts may be amended from time to time." Id. at 37 (citing 2001 Judicial Conference Report at 46). The Exide Court implied that the Judicial Conference made a mistake by issuing new direction in 2017 rather than relying on the operation of the 2001 Judicial Conference statement. Had it done so, the BA fees would have gone into effect at the same time and in the same amounts as the U.S. Trustee fees. The Exide Court concluded the problem was with implementation of the statute, not with the enactment of the statute. Id. at 38. In other words, it is not that Congress enacted a non-uniform statute; the problem is that the Judicial Conference applied it in a non-uniform way. The Exide Court also points out that Congress only has authority to direct what happens to the U.S. Trustee districts and simply

14

cannot direct what happens in the BA districts, so it is uniform as to everything over which Congress has authority. Id. at 37-38.

Similarly, in the Clinton case, the Court held that the law applied with geographical uniformity to a particular class of debtors. Although Section 1930(a)(7) says that the Judicial Conference may impose the same fees, the Clinton Court, read the "may" as a "shall" and coupled with the actual Judicial Conference actions, found that the equal BA fees were mandatory. 608 B.R. 96, 116. That was enough to make the law uniform overall. The Clinton Court also pointed out that the U.S. Trustee cannot violate the bankruptcy clause; it is only Congress that can violate the bankruptcy clause, and as long as Congress passed a uniform act if it is enforced non-uniformly, that is not a constitutional violation but perhaps a violation of the statute. Id. at 118. The Clinton opinion strongly suggests the Court did not like the outcome of the ruling, but it said the real problem was that the Judicial Conference misapplied the law. Id. at 120-21.

On the other hand, the Circuit City Court found the law was not uniform and violated the Constitution because, although it applied to all Chapter 11 debtors, it did not apply to all debtors throughout the country but only to those in U.S. Trustee districts. 606 B.R. 260, 270. The Life Partners Court also found that the Section 1930(a)(6) amendment violated the bankruptcy clause. That court rejected the idea that this was a Judicial Conference mistake. The Court stated that Section 1930(a)(7) says the Judicial Conference may act and the section therefore is not mandatory. 606 B.R. 277, 286. The Court noted the fact that the Judicial Conference did act, and acted differently, is evidence that Section 1930(a)(7) is not mandatory. Id. at 287. The Court went on to find there is no rational basis for treating bankruptcy cases in U.S. Trustee districts different from bankruptcy cases in BA districts. Id.

From this Court's perspective, the lack of uniformity (without addressing whether that lack of uniformity is unconstitutional) is created by the statute which exempts North Carolina and

15

Alabama from participation in the U.S. Trustee program. Congress only has authority over the U.S. Trustee districts. The U.S. Trustee program is self-funded by law. Congress amended the fee schedule to ensure the self-funded nature of the program continued. This Court agrees with the Life Partners court in concluding Section 1930(a)(7) is permissive – it says the Judicial Conference *may* act and is therefore discretionary. The fact the Judicial Conference acted differently by passing a different resolution after the amendments to Section 1930(a)(6), is further evidence that Section 1930(a)(7) is not mandatory. It seems the Judicial Conference did not view its 2001 statement to be binding as to all amendments to Section 1930(a)(6) and has determined it can treat the BA districts different from the U.S. Trustee districts. Congress cannot govern fees in the BA districts; that is up to the Judicial Conference. The Judicial Conference did act and chose a different approach. There is nothing this Court can do about the Judicial Conference's actions. It cannot order the U.S. Trustee to violate the law by charging something less than what Congress has specifically required and, at the same time, the Judicial Conference is not a party to this action.

The Court is persuaded by the analysis of the Court in Exide that the Act is uniform. The focus of the statute is on funding the U.S. Trustee system, which is funded separately and differently from BAs. The Act is uniform in solving that problem, which is a legitimate problem to solve. The Act is narrowly drawn. The increase in fees only applies in certain years and only if a deficit in the U.S. Trustee fund exists. The Court concludes the Act does not violate the bankruptcy clause.

    c. **Uniformity Clause with Respect to Duties, Imposts, and Excises**

Finally, the Court finds the amendment to Section 1930(a)(6) does not violate the uniformity clause of the Constitution. Article I, Section 8, lists Congress' powers and states Congress shall have the power to "lay and collect taxes, duties, imposts and excises . . . but all duties, imposts and excises shall be uniform throughout the United States." The parties in this

case and others have disagreed about whether the U.S. Trustee fees fall within the category of "duties, imposts and excises."

The courts in <u>Buffets</u> and <u>Circuit City</u> found that the amendment to Section 1930(a)(6) violated the uniformity clause if the fees were viewed as a tax, but neither court analyzed whether the fee was in fact a tax. In the <u>Buffets</u> case, the Court held that because the start date of charging the higher U.S. Trustee fees was not uniform, the fees charged in the first three quarters of 2018 by the U.S. Trustee were unconstitutional. 597 B.R. at 594-95. The <u>Circuit City</u> Court found the Act violated the uniformity clause by excluding BA districts from the increase in fees and thereby discriminated against the U.S. Trustee districts. 606 B.R. at 269. Neither provided any analysis about how the amended U.S. Trustee fees constituted a tax, duty, impost, or excise subject to the uniformity clause. Other courts considering similar fees have rejected such arguments and found user fees are not the equivalent of a tax and therefore do not violate the uniformity clause. For example, in <u>Longshore v. United States</u>, 77 F.3d 440, 444 (Fed. Cir. 1996), <u>cert. denied</u>, 519 U.S. 808 (1996), the Court dismissed the plaintiff's argument that a FCC user fee keyed to the agency's costs resulted in the levy of a general tax. Accordingly, this Court concludes the argument that the fees violate the uniformity clause is not valid.

### D. <u>Conclusion</u>

This Court concludes the Act was meant to apply to all pending cases and to all disbursements made after January 1, 2018. The application of the Act is not unconstitutional, at least as applied to this case, where the plan was filed and confirmed after the Act became effective. This is a law on the subject of bankruptcies, and it is subject to the bankruptcy clause. This law is uniform on its face. Its purpose is to solve a funding problem in the U.S. Trustee program, and it does so. Accordingly,

**IT IS ORDERED** that the amended U.S. Trustee fee schedule applies to disbursements

17

made in this case and the Liquidating Trustee is directed to pay fees due to the U.S. Trustee in the amount of $37,081.00 for fees due through the end of 2019.

**ORDERED FURTHER** that upon payment of the fees and the filing by the Liquidating Trustee of a notice to that effect on the docket, the Clerk is directed to close the case, with the closure effective as of March 31, 2020.

**END OF DOCUMENT**

**Distribution List**

Matthew W. Levin
J. Robert Williamson
Scroggins & Williamson, P.C.
4401 Northside Parkway
Suite 450
Atlanta, GA 30327

Thomas W. Dworschak
Jeneane Treace
Department of Justice
Office of the United States Trustee
Suite 362, Richard B. Russell Building
75 Ted Turner Drive, SW
Atlanta, GA 30303

Beth A. Levene
Department of Justice
Executive Office for United States Trustees
441 G Street, N.W., Suite 6150
Washington, DC 20530